The MAINE ASSOCIATION OF HANDI-CAPPED PERSONS OF PORTLAND, MAINE, David Cann of Portland, Maine, Gloria Davis of Westbrook, Maine, and Rita Takasch of Portland, Maine, individually and on behalf of a class of persons similarly situated, Plaintiffs,

v.

Elizabeth DOLE in her capacity as Secretary of the United States Department of Transportation, Defendant.

Civ. No. 85–0083P.

United States District Court,
D. Maine.

Dec. 3, 1985.

Harold L. Lichten, Tureen & Margolin, Portland, Me., for plaintiffs.

Raymond J. Larizza, Judith F. Ledbetter, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

### I. *Procedural Background*

This matter is pending before the Court on motions for summary judgment filed by both the Plaintiffs and the Defendant. Plaintiffs seek, on entry of summary judgment in their favor, relief prayed for in the Complaint. That relief is as follows:

1. That this Court enter appropriate injunctive and/or declaratory relief ordering defendant Dole, and the United States Department of Transportation to forthwith issue final regulations, as required by 49 U.S.C. § 1612(d), and 29 U.S.C. § 794, governing the provision of appropriate and adequate accessible transportation services to elderly and handicapped persons who are in need of accessible transportation, or in the alternative to order Defendant Dole to forthwith make final the proposed regulations originally published in the Federal Register, volume 48, number 175, on September 8, 1983, and to order defendant Dole to enforce such regulations; and

2. That this Court award plaintiffs' counsel reasonable attorneys' fees for

the prosecution of this action pursuant to 29 U.S.C. § 794(a), and the Equal Access to Justice Act.

Complaint, at 6–7. Defendant seeks as relief, on entry of summary judgment in her favor, that "the Court ... in the exercise of its sound discretion, stay its hand and permit completion of the rulemaking process without the constraint of an arbitrary deadline." Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, at 3.

The action was commenced by the filing, on April 3, 1985, of a Complaint seeking injunctive and declaratory relief. In summary, the operative allegations of the Complaint set forth the jurisdiction of the Court pursuant to 28 U.S.C. §§ 1331, 1337, 1343, 1361 and 5 U.S.C. § 702. The substantive allegations are as follows. The Plaintiffs are disabled or handicapped or elderly persons or associations composed of such persons who are residents of Cumberland County, Maine. Because of their disabilities they cannot gain access to the inaccessible fixed-route buses utilized by the Greater Portland Transit District. The Defendant, Dole, is the Secretary of the United States Department of Transportation and is responsible for overseeing and administering the Urban Mass Transit Act, 49 U.S.C. §§ 1601, et seq., the Federal-Aid Highway Act of 1973, 23 U.S.C. §§ 101, et seq., and the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 1612(d). The Plaintiffs are potential users of accessible public transportation in and around the City of Portland, Maine, which transportation is provided by the Greater Portland Transit District (METRO). METRO operates a fixed-route bus system which is totally inaccessible to the plaintiff class and provides no alternative transportation services to the Plaintiffs. METRO receives a significant level of federal transportation subsidies on an annual basis to support the operation of its bus system.

In 1982 Congress enacted the Surface Transportation Assistance Act of 1982, which required the Defendant, as Secretary of the United States Department of Transportation, in carrying out the Federal-Aid Highway Act of 1973, the Federal Rehabilitation Act of 1975, 29 U.S.C. § 794, and the Urban Mass Transportation Act, 49 U.S.C. §§ 1601, et seq., to promulgate, no later than January 6, 1983, proposed regulations, and not later than July 6, 1983, to promulgate final regulations establishing the minimum criteria for the provision of transportation services to handicapped and elderly individuals by recipients of federal assistance. See 49 U.S.C. § 1612(d). The Defendant has "pursuant to the mandate of 49 U.S.C. § 1612(d)," Complaint ¶ 12, issued proposed regulations governing the provision of accessible public transportation to mobility impaired persons and wheelchair users. See 48 Fed.Reg. No. 175, September 8, 1983. To date, the Defendant has failed or refused to finalize said regulations and, as a result, the Secretary has expressly disobeyed the mandate of Congress to promulgate regulations as required by 49 U.S.C. § 1612(d).

Plaintiffs are directly and adversely affected by the Secretary of Transportation's failure and refusal to promulgate the final regulations as required by the statute. Proposed regulations published by the Defendant "would mandate a level of accessible transportation services to mobility impaired persons and wheelchair users far greater than that presently provided" to Plaintiffs' class. Id. ¶ 15. The Plaintiffs are particularly aggrieved by the failure of the Defendant to enact the regulations as required by the statute "in that they are the intended beneficiaries of the regulations so mandated." Id. ¶ 16. The Defendant has expressly violated 49 U.S.C. § 1612(d) and 29 U.S.C. § 794[1] in that she

---

**1.** Title 29 U.S.C. § 794 provides as follows:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the

has failed and refused to publish or implement final federal regulations governing the provision of public transportation services for the handicapped as required by that section.

Defendant filed an Answer on June 11, 1985, asserting as a defense that the Complaint fails to state a claim upon which relief can be granted and responding to the allegations of the Complaint. The Answer appears to dispute the jurisdiction of the Court in that it states:

> The jurisdiction section of the complaint contains conclusions of law and not averments of fact to which an answer is required but, insofar as an answer may be deemed to be required, it is denied.

Answer at 1. The Answer asserts that the Defendant is without knowledge or information sufficient to form a belief as to the truth of those allegations setting forth the status of the Plaintiffs, and it admits the official position of the Defendant and her responsibility for the discharge of the duties and responsibilities of that office. It is admitted that METRO is a recipient of federal funds under programs administered by the Urban Mass Transportation Administration, and that publication of proposed regulations governing the provision of accessible public transportation to mobility impaired and wheelchair users has occurred.

The Answer denies that the Defendant has failed or refused to date to finalize regulations as required by 49 U.S.C. § 1612(d) "except to admit that final regulations implementing 49 U.S.C. § 1612(d) have not yet been promulgated." *Id.,* ¶ 13. It is denied that the Plaintiffs and the class of plaintiffs are directly and adversely affected by the alleged failure or refusal of the Defendant to promulgate the final regulations, and it is admitted that wheelchair users and other mobility impaired persons

are among the intended beneficiaries of the regulations required to be promulgated under 49 U.S.C. § 1612(d). It is denied that the Defendant has expressly violated the provisions of either 49 U.S.C. § 1612(d) or of 29 U.S.C. § 794 by failing or refusing to publish or implement the allegedly required regulations.

Filed with the Defendant's Answer was the Defendant's Motion for Summary Judgment based upon the Defendant's statement of material facts, the Declaration of Robert C. Ashby, and the Memorandum of Points and Authorities filed in support of said motion. Plaintiffs filed on June 19, 1985 a Motion for Summary Judgment or in the Alternative for a Preliminary Injunction. That motion asserts that irreparable harm will result to Plaintiffs if a decision in this matter is delayed, that there is a reasonable likelihood that the Plaintiffs will prevail on the merits in this matter, that there will be little harm to the Defendant resulting from issuance of an order requiring immediate publication of final regulations, and that public policy favors the issuance of such injunctive relief to prevent the Secretary from disobeying a mandate of Congress. In support of the motion Plaintiffs filed a statement of material facts and a memorandum of law.

## II. *Factual Background*

An examination of the Statement of Genuine Issues filed by the Defendant and of the Plaintiffs' Statement of Material Facts as to Which There is No Issue show the following facts to be undisputed. In July of 1981 the Department of Transportation published final interim regulations pursuant to 49 U.S.C. § 1612. Those regulations are final, have the full force and effect of law, and currently govern the provision of accessible transportation for elderly and handicapped persons. At the time of the publication of the 1981 regulations, the De-

---

United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies

of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

partment of Transportation continued its ongoing consideration of those regulatory requirements which should be imposed in the mass transit area to carry out the nondiscrimination requirements of federal law. The 1981 regulations were intended to remain in effect until replaced by a "new permanent regulation governing the provision of mass transit services that handicapped persons can use." 46 Fed.Reg. 37490.

As of December 1982 the Department of Transportation had not published new permanent regulations replacing the 1981 regulations. In late December of 1982 the Senate and House passed section 317(c) of the Surface Transportation Assistance Act of 1982, requiring the Secretary of Transportation to promulgate final regulations governing the provision of transportation services for handicapped and elderly persons by July 6, 1983. As of the present date, the Secretary has failed to publish or promulgate final regulations governing the provision of transportation services to elderly and handicapped persons.

Plaintiffs assert and Defendant disputes that "[i]t is neither impossible nor infeasible for the Secretary to promulgate such regulations forthwith." Plaintiffs' Statement of Material Facts, ¶ 5. Defendant asserts that the Declaration of Robert C. Ashby, submitted in support of the Defendant's motion, demonstrates that

it is both impossible and infeasible [sic] for the Secretary to promulgate final regulations "forthwith." Additional time is required for informed and reasoned decision-making within the Department of Transportation and for review, prior to publication, of the final regulations by the Office of Management and Budget and the Department of Justice as required by Executive Order 12291 and Executive Order 12250.

Defendant's Statement of Genuine Issues, ¶ 5.

### III. *Statutory Background*

Congress enacted in 1970 49 U.S.C. § 1612(a) as section 16(a) of the Urban Mass Transportation Act. The provision declares the national policy to be that elderly and handicapped persons have the same right to the use of mass transportation facilities and services as other persons and requires that special efforts shall be made in the planning and design of mass transportation services to assure the availability of mass transportation to elderly and handicapped persons. Congress further provided that all federal programs offering assistance in the field of mass transportation "should contain provisions implementing this policy." *Id.*

In 1973 Congress enacted section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which applies to all federally funded programs. Under that section:

No otherwise qualified handicapped individuals ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

Thereafter, in 1976, a single set of regulations designed to implement both section 504 and section 16(a) was issued by the Urban Mass Transportation Administration (UMTA). These regulations left to local choice resolution of the issue as to the best type of service to provide in mass transportation systems for wheelchair users. Thus, local transportation systems were to decide whether wheelchair users were best served as a matter of public policy by provision of full accessibility for such persons to regular route bus service or whether specialized service or some combination of the two methods was to be preferred. Basically, a transit authority could, if it chose to do so, select the approach of equipping its regular fixed route buses with wheelchair lifts, or it could elect to provide special, separate "door-to-door" transportation for such users by minibuses equipped with wheelchair lifts.

The Department of Health, Education and Welfare was required to coordinate the implementation of section 504 by all federal agencies that offered financial assistance

to any program or activity under Executive Order 11914.[2] HEW adopted in 1978 guidelines embracing the concept of mainstreaming, making those guidelines applicable to all government agencies. With respect to public transportation, those guidelines contemplated that all federally funded systems would eventually be made fully accessible to the handicapped. The guidelines required that all new buses be accessible to wheelchair users.[3]

Thus, a conflict developed between these regulations and the Department of Transportation's 1976 regulations. In an effort to resolve that conflict, the Department of Transportation promulgated new regulations in 1979 that implemented the mainstreaming concepts of the HEW regulations. 44 Fed.Reg. 31442. The 1979 regulations were invalidated by judicial action in *American Public Transit Association v. Lewis*, 655 F.2d 1272 (D.C.Cir.1981), in which the Court held that the Department of Transportation had exceeded its statutory authority by requiring extensive modifications to existing programs and by imposing extremely heavy financial burdens on local transit authorities. *Id.*, at 1278. The Court found that the Department of Transportation had simply adopted the HEW guidelines without the performance of any independent policy-making process and expressed no opinion as to whether or not such higher profile requirements for the benefit of handicapped persons could be implemented by an appropriate decision-making process under 49 U.S.C. § 1612(a). The case was remanded for resolution of that issue and was ultimately dismissed by agreement of both parties. The Department of Transportation in issuing its regulations in 1981 returned to the 1976 regulations and the guidelines and regulatory scheme crafted therein. The validity of this regulatory pattern has never been questioned.

In 1983 section 16(d) was added to the Urban Mass Transportation Act by 49 U.S.C. § 1612(d). The new provision re-

quires the development of more specific instructions than are contained in the present guidelines for meeting the nondiscrimination requirements of section 504 and the special efforts requirement of section 16(a). The new section directs the Secretary to promulgate regulations establishing "minimum criteria for the provision of transportation service to handicapped and elderly individuals by recipients of federal financial assistance" and of "procedures for the Secretary to monitor recipients' compliance with such criteria." These regulations must also include "provisions for insuring that organizations and groups representing such individuals are given adequate notice of and opportunity to comment on the proposed activities of recipients for the purpose of achieving compliance with such regulations." The section requires that proposed regulations be published within ninety days of the date of enactment of the section and that final regulations be adopted and published within one hundred eighty days of that date, or no later than July 6, 1983.

### IV. *Facts*

The procedures followed by the Defendant following the enactment of 49 U.S.C. § 1612(d) are set out in the Declaration under oath of Robert C. Ashby, filed by the Defendant in support of her Motion for Summary Judgment. The recital of events set forth therein does not appear to be disputed on the record in this case. Mr. Ashby states the following:

2. When the STAA was enacted on January 6, 1983, the Department promptly began working on a notice of proposed rule-making (NPRM) to implement section 317(c) of that Act. The Department was aware that section 317(c) called for the publication of an NPRM within 90 days of enactment (i.e., April 6, 1983) and a final rule within 180 days of enactment (i.e., July 5, 1983).

3. The Department completed its work on the NPRM (i.e., it was drafted

---

**2.** 41 Fed.Reg. 17871 (1976).

3 43 Fed.Reg. at 2139.

and concurred in by the Secretary of Transportation) by mid-April, 1983.

4. Under Executive order 12250 (45 Fed.Reg. 72995 (1980)), the Department is required to submit such an NPRM to the Department of Justice (DOJ) for review and approval. Under Executive Order 12291 (46 Fed.Reg. 13193 (1981)), the Department is required to submit such an NPRM to the Office of Management and Budget (OMB) for review and approval. DOJ and OMB have agreed that that [sic] when both must review a rule, DOJ will review it first, and then OMB will review it. In the case of this NPRM, this dual review took over four months, OMB approval being received in late August, 1983.

5. DOT published the NPRM for comment on September 8, 1983 (48 Fed.Reg 40684). For a rule on a subject as complex and controversial as mass transit services for disabled persons, a reasonably long comment period is necessary in order to ensure that interested parties have the opportunity to submit views and information. Therefore, the NPRM had a 60-day comment period. At the request of a number of commenters (most of whom were disabled individuals or organizations representing them), the Department extended this comment period for 30 days (48 Fed.Reg. 50125; Oct. 31, 1983). Consequently, the comment period closed on December 8, 1983.

6. The Department received 650 comments in response to the NPRM, many of which were lengthy and detailed. Many of the comments also expressed diametrically opposing views. The Department's staff completed reading and analyzing the comments by mid-March, 1984.

7. In order to make reasonable policy decisions on the issues involved in this rulemaking, it is necessary for the Department to consider the costs, benefits, and cost-effectiveness of different regulatory approaches. In addition to being important for reasoned decisionmaking, such consideration is necessary in order to write the Regulatory Impact Analysis

required by Executive Order 12291 for major rules.

8. In addition to reviewing information provided in the comments, the Department went about gathering information concerning the costs, benefits, and cost effectiveness of alternative requirements in two ways. First, members of the Department's staff made case studies of the systems of transportation for handicapped persons in several urban areas. Second, the Department hired a consultant to use a computer model to predict nationwide costs and benefits of different approaches. Both studies were quire detailed, and were not effectively completed until November, 1984.

9. Concurrently, the Department's staff began preparing an options paper, explaining the major policy issues before the Department and alternatives for resolving them. The final options paper incorporated data from the two studies, and requested the views of the Department's concerned policymaking officals [sic] on the issues and alternatives. These officials have made their recommendations in response to the options paper.

10. A decision paper incorporating these recommendations has been transmitted to the Secretary for her action. Following the Secretary's decisions on the issues raised in this paper, Department staff will be in a position to complete drafting the portions of the regulation covered by the decision paper. (First drafts of other parts of the final rule, primarily involving administrative matters, have already been written.)

11. When a complete final rule has been drafted, it will be circulated within the Department. Circulation of the Regulatory Impact Analysis occurs at the same time. This circulation and concurrence procedure is required for significant Department of Transportation rules by the Department's Regulatory Policies and Procedures (44 Fed.Reg. 11034 (1979)).

12. Following the Secretary's concurrence, the final rule must be transmitted

to DOJ and OMB for review and approval under Executive Orders 12250 and 12291, respectively. (The Regulatory Impact Analysis must also be submitted to OMB.) Executive Order 12250 does not specify any time limit for DOJ consideration. Executive Order 12291 specifies a 30-day time period for OMB consideration of a major final rule, but OMB may, at its discretion, extend review indefinitely.

13. Following DOJ and OMB clearance of the final rule, the Department will publish the final rule in the *Federal register*. Absent good cause for making the rule effective immediately upon publication, the rule would become effective 30 days later.

Declaration of Robert C. Ashby, 1–5.

## V. *Discussion*

The Defendant has put forth a lengthy and persuasive argument that the full administrative procedure for drafting and reviewing the final regulations be permitted to go forward unchecked. This Court is aware of the need to implement clear and effective regulations capable of withstanding the scrutiny of challenges following enactment, and it has no intention of unnecessarily undercutting an effective evaluation process in the preparation of such regulations.

Nevertheless, the Court also is aware that over two years have passed since the firm deadline of July 6, 1983 for publishing of final regulations in this area, as set by the Congress in the Surface Transportation Assistance Act of 1982. 49 U.S.C. § 1612(d). That deadline was imposed to insure that parties such as Plaintiffs, namely disabled, handicapped or elderly persons or associations, gain access to fixed-route bus systems such as METRO which receive federal funds for their operation. The Secretary continues to violate the express language of the 1982 Act, and this Court is not prepared to sit by and condone the Secretary's unimaginably leisurely pace in performing her functions while the Plaintiffs' class awaits implementation of the will of Congress.

This Court will, therefore, order the Secretary of Transportation to complete, within ten (10) days of the Order herein, the drafting of the Final Regulations and to submit them forthwith for review to the Office of Management and Budget ("OMB") and the Department of Justice ("Justice") *with her request for urgent consideration of them by those agencies.* The Court will also order that the Secretary make continuing efforts to obtain prompt action from the Department of Justice and the OMB. Finally, the Court will order the Defendant to make a report to this Court every fifteen (15) days regarding her knowledge of the progress of the OMB and Justice reviews of the regulations and a detailed description of the efforts of the Secretary in each fifteen-day period to accelerate that review process and a statement of the results thereof.

The Court recognizes the need for an informed evaluation and review of the new regulations. It also acknowledges the import of Executive Orders 12291 and 12250, mandating review by OMB and Justice, respectively, of new and final regulations. In addition, the Court has no intention of requiring the Secretary to perform a reviewing task which is impossible to meet, however unfortunate that may be. *NRDC v. Train,* 510 F.2d 692, 712 (D.C.Cir.1975); *State v. Gorsuch,* 554 F.Supp. 1060 (S.D.N. Y.1983).

Nevertheless, the Secretary bears a heavy burden of proving impossibility as a defense to noncompliance with the deadlines imposed by Congress. *Alabama Power Co. v. Costle,* 636 F.2d 323, 359 (D.C.Cir.1979), cited with approval in *State v. Gorsuch,* 554 F.Supp. at 1064. While it is apparent that much of the review process at the Department of Transportation itself has already taken place, such as the comment period and the review of all comments, the preparation of a final options paper utilizing data from the case studies and the computer model of costs and benefits, and a decision paper with recommendations for review by the Secretary, the

delay in meeting the statutory promulgation deadline is not wholly justified. The Court's Order will not undercut additional analysis of the regulations: first, the OMB and Justice reviews still will take place, with an appropriate stimulus for promptitude by the Secretary and under the scrutiny of this Court; second, the Secretary is permitted to expeditiously complete her own review, provided she forthwith transmits copies of the drafts to OMB and Justice.

## VI. *Order*

For the foregoing reasons, it is hereby ORDERED:

(1) That the Defendant, Elizabeth Dole, Secretary of the United States Department of Transportation, complete within ten (10) days of the date of this Order the drafting of final regulations under the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 1601, *et seq.;*

(2) That the Defendant transmit such regulations by appropriate means within (10) days of the date of this Order to the Office of Management and Budget and the United States Department of Justice for their review and urge those agencies to consider and respond to the proposed final regulations on an urgent basis; and

(3) That the Defendant make reports to this Court every fifteen (15) days as to the progress of the review by the Office of Management and Budget and the Department of Justice, and as to efforts by Defendant to accelerate that review process.